IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


HIDEKI ELECTRONICS, INC.,                    04-CV-1862-BR

       Plaintiff,

                              OPINION AND ORDER

v.

LACROSSE TECHNOLOGY, LTD, and
RICHMOND HOLDINGS IP, LLC,

       Defendants.


**JOHN D. OSTRANDER**
**WILLIAM A. DREW**
Elliott, Ostrander & Preston, P.C.
707 S.W. Washington Street, Suite 1500
Portland, OR 97205
(503) 224-7112

       Attorneys for Plaintiff

**KENNETH R. DAVIS**
Lane Powell, PC
601 S.W. Second Avenue, Suite 2100
Portland, OR  97204
(503) 778-2100


1 - OPINION AND ORDER

**DANA D. MCDANIEL**
Spotts Fain PC
411 E. Franklin Street, Suite 600
Richmond, VA  23219
(804) 788-1190

      Attorneys for Defendants

**BROWN, Judge.**

      This matter comes before the Court on Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction or To Drop Party [LaCrosse] (#44) and Defendants' Motion to Transfer Venue (#58). On April 12, 2006, the Court heard oral argument on the Motions and took them under advisement.

      For the reasons that follow, the Court **GRANTS** Defendants' Motion to Dismiss pursuant to Rule 12(b)(1) as to Defendant LaCrosse, **DENIES as moot** Defendants' Motion to Dismiss pursuant to Rule 12(b)(2) as to Defendant Richmond, **DENIES as moot** Defendants' Motion to Drop Party, and **DENIES as moot** Defendants' Motion to Transfer Venue.


**<u>PROCEDURAL BACKGROUND</u>**

      On December 22, 2004, Plaintiff Hideki Electronics, Inc., filed a Complaint in this Court against LaCrosse Technology, Ltd., seeking a declaratory judgment that Plaintiff was not infringing patents owned by LaCrosse.

      On February 18, 2005, Richmond Holdings IP, LLC, filed a

2 - OPINION AND ORDER

patent-infringement action in the District Court for the Eastern District of Virginia against Plaintiff, Plaintiff's parent company, and an affiliate of Plaintiff alleging Hideki was infringing a number of Richmond patents.

On February 22, 2005, Plaintiff filed a First Amended Complaint in this Court against LaCrosse and added Richmond as a Defendant pursuant to Fed. R. Civ. P. 15(a). Plaintiff requested the Court to enter a declaratory judgment that Plaintiff was not infringing the patents of either Defendant.

On March 15, 2005, Richmond filed a complaint with the International Trade Commission (ITC) requesting an investigation of Plaintiff "and others" concerning "some of the same patent claims at issue in this litigation." On April 8, 2005, the ITC ordered an investigation of Richmond's complaint.

On April 18, 2005, Defendants filed in this Court a Motion to Drop LaCrosse as a Party and a Motion to Dismiss.

On May 5, 2005, the parties filed a stipulated Motion to Stay the proceedings in this Court pending resolution of the ITC investigation. On May 19, 2005, the Court issued an Order staying the proceedings pursuant to 28 U.S.C. § 1659.

On December 15, 2005, the Court lifted the stay. On December 28, 2005, Plaintiff filed a Motion for Leave to File a Second Amended Complaint, which the Court granted.

On January 6, 2006, Plaintiff filed a Second Amended

Complaint in which Plaintiff seeks a declaratory judgment that
(1) it is not infringing the patents at issue, (2) the patents
are invalid, (3) Defendants have "misused" the patents by filing
their action in the Eastern District of Virginia and by
initiating the ITC investigation, and (4) Richmond has engaged in
inequitable conduct by reinstating the 6,076,044 Patent.

On January 26, 2006, Defendants filed a Motion to Dismiss in
which LaCrosse moves to dismiss the Second Amended Complaint for
lack of subject-matter jurisdiction pursuant to Federal Rule of
Civil Procedure 12(b)(1) and Richmond moves to dismiss the Second
Amended Complaint for lack of personal jurisdiction pursuant to
Rule 12(b)(2).  In the alternative, Defendants move to drop
LaCrosse as a party.

On March 1, 2006, Defendants filed a Motion to Transfer
Venue in which they seek to transfer venue of this matter to the
Eastern District of Virginia if the Court denies Defendants'
Motions to Dismiss.


**FACTUAL BACKGROUND**

The Court takes the facts from the Amended Complaint and the
Declaration of James Boyle:

Plaintiff imports, sells, and distributes weather stations
and 433MHz remote transmitters.  At some point in the fall of
2004, James Boyle, Plaintiff's President, "learned . . . LaCrosse

4 - OPINION AND ORDER

. . . had recently purchased certain patents (the Patents-in-Suit), which it claimed related to weather stations similar to those Hideki intended to sell and distribute."

In early October 2004, Boyle met Allan McCormick, LaCrosse's President, at an electronics show.  Boyle asked McCormick "how he intended to use the Patents-in-Suit."  According to Boyle, McCormick stated "'they' had 'an interest in protecting market share and eliminating competition' and that 'they' contemplated 'assessing a royalty' to anyone who tries to enter the market."[1] Boyle asserts McCormick knew at the time he made those statements that competing Hideki products were entering the United States market.

After this meeting, Boyle sought an opinion from patent counsel regarding Hideki's products.  Boyle also decided to file a declaratory-judgment action against LaCrosse regarding these patents.

### DEFENDANT LACROSSE'S MOTION TO DISMISS PURSUANT TO RULE 12(B)(1) OR TO DROP PARTY

#### Standards

Generally when considering a motion to dismiss, a court must limit its review to the contents of the complaint, take all

---

[1] Defendants allege in their Reply that McCormick denies making these statements, but Defendants did not provide an affidavit or declaration by McCormick.

allegations of material fact as true, and view the facts in the light most favorable to the nonmoving party. *Cooper v. Pickett*, 137 F.3d 616, 622 (9th Cir. 1998).

In *Parrino v. FHP, Inc.*, however, the court held "a district court ruling on a motion to dismiss may consider a document the authenticity of which is not contested, and upon which the plaintiff's complaint necessarily relies." 146 F.3d 699, 706 (9th Cir. 1998). In addition, the court may review evidence, when necessary, to rule on a challenge to subject-matter jurisdiction. *Augustine v. United States*, 704 F.2d 1074, 1077 (9th Cir. 1983).

## Discussion

Defendant LaCrosse moves to dismiss Plaintiff's Second Amended Complaint on the ground that the Court lacks subject-matter jurisdiction for two reasons: (1) Plaintiff has failed to show the existence of an actual controversy with LaCrosse as required by the Declaratory Judgments Act, 28 U.S.C. § 2201, and (2) LaCrosse did not own or have any rights in the patents at issue when Plaintiff filed this action against LaCrosse. Because the Court decides the Motion to Dismiss on the first basis, the Court need not reach the issue whether LaCrosse owned the patents at the time Plaintiff brought this action.

## I.  Declaratory Judgment Standard

The Declaratory Judgment Act provides:  "In a case of actual

6 - OPINION AND ORDER

controversy within its jurisdiction, . . . any court of the
United States . . . may declare the rights and other legal
relations of any interested party seeking such declaration."  28
U.S.C. § 2201(a).  The purpose of a declaratory-judgment action
is to allow a party "who is reasonably at legal risk because of
an unresolved dispute, to obtain judicial resolution of that
dispute without having to await the commencement of legal action
by the other side."  *BP Chemicals Ltd. v. Union Carbide Corp.*,
4 F.3d 975, 977 (Fed. Cir. 1993).

The Act parallels Article III of the United States
Constitution, which "requires an actual controversy between the
parties before a federal court may exercise jurisdiction over an
action for a declaratory judgment."  *EMC Corp. v. Norand Corp*,.
89 F.3d 807, 810 (Fed. Cir. 1996).  Whether there is an "actual
controversy" generally depends on "whether the facts alleged,
under all the circumstances, show that there is a substantial
controversy . . . of sufficient immediacy and reality to warrant
the issuance of a declaratory judgment."  *Id.* (citation omitted).
"'[W]hen there is no actual controversy, the court has no
discretion to decide the case.'"  *Teva Pharm. USA, Inc. v.
Pfizer, Inc.*, 395 F.3d 1324, 1332 (Fed. Cir. 2005)(quoting
*Spectronics Corp. v. H.B. Fuller Co.*, 940 F.2d 631, 634 (Fed.
Cir. 1991)).

The Federal Circuit has developed a two-part inquiry to

determine whether there is an actual controversy in actions in
which a party seeks a declaration regarding patent infringement
or the invalidity of a patent.  *Teva*, 395 F.3d at 1332.  For an
actual controversy to exist there must be:

> (1) an explicit threat or other action by the
> patentee which creates a reasonable apprehension
> on the part of the declaratory judgment plaintiff
> that it will face an infringement suit; and
> (2) present activity by the declaratory judgment
> plaintiff which would constitute infringement, or
> concrete steps taken with the intent to conduct
> such activity.

*Teva*, 395 F.3d at 1332 (citing *Gen-Prove, Inc. v. Vysis, Inc.*,
359 F.3d 1376, 1380 (Fed. Cir. 2004)).

The test is objective and "focuses on whether [the
defendant's] conduct rose to a level sufficient to indicate an
intent to enforce its patent."  *Shell Oil Co. v. Amoco Corp.*, 970
F.2d 885, 888 (Fed. Cir. 1992)(citation omitted).  The court
"must look for any express charges of infringement, and if none,
then to the totality of the circumstances."  *Id*.  An actual
controversy, however, must exist at the time the complaint is
filed.  "Later events may not create jurisdiction where none
existed at the time of filing."  *GAF Bldg. Materials Corp. v. Elk
Corp. of Dallas*, 90 F.3d 479, 483 (Fed. Cir. 1996).  *See also
Arrowhead Indus. Water, Inc. v. Ecolochem, Inc.*, 846 F.2d 731,
734 n.2 (Fed. Cir. 1988)("The presence or absence of jurisdiction
must be determined on the facts existing at the time the
complaint under consideration was filed.").

8 - OPINION AND ORDER

"The plaintiff has the burden of establishing by a preponderance of the evidence, *inter alia*, that it has a reasonable apprehension that it will be sued." *Shell Oil*, 970 F.2d at 888.

## II. Plaintiff has not shown an actual controversy with LaCrosse existed at the time of filing the Complaint.

To establish Plaintiff had a reasonable apprehension that LaCrosse would file a patent-infringement action against Plaintiff, it relies on (A) the statements McCormick allegedly made to Boyle at the trade show together with (B) the asserted litigiousness of a part-owner of the company with which LaCrosse "teamed" to buy the patents at issue.

### A.    Statements of McCormick

Plaintiff contends McCormick's statements to Boyle at the trade show form part of the basis for Plaintiff's reasonable apprehension that LaCrosse would bring an action against Plaintiff for patent infringement.

In *Shell Oil*, the plaintiff initiated a meeting between its patent attorneys and the defendant's patent attorney. At the meeting, the plaintiff's attorney stated the plaintiff would begin manufacturing a product and believed it did not infringe the defendant's patent, but the plaintiff wanted to reach an agreement to resolve "any potential uncertainty." 970 F.2d at 886. The plaintiff's counsel left the defense counsel with some information about the new product and a proposed royalty

9 - OPINION AND ORDER

agreement.  *Id*.  The parties engaged in several offers and counteroffers that included a statement by defense counsel indicating the defendant understood from the meeting that the plaintiff's product "*falling within the [defendant's] patent* would be used in one plant in Europe."  *Id*. (emphasis in original).  The parties' attorneys also had numerous telephone conversations in which defense counsel allegedly stated the plaintiff's product would infringe the defendant's product even if the plaintiff's product met certain planned specifications. *Id*.  Counsel met again in May 1990, and the defendant refused to accept the plaintiff's offers.  *Id*.  In December 1990, the defendant sent the plaintiff a letter "regarding [the plaintiff's] operations under [the defendant's] patent" and wrote:  "[A]lthough [the plaintiff] disagrees that [the defendant's] patent covers [the plaintiff's] operations, it recognizes that the claims of such patent may be read to do so." *Id*. at 887.  At the end of a final meeting between the parties, the plaintiff's counsel asked the defendant's representative:  "I assume you will enforce your patent?"  The defendant's representative answered, "Yes."  *Id*.  The plaintiff filed a declaratory-judgment action after the final meeting and alleged the above interactions created a reasonable apprehension that the defendant would bring an infringement action against the plaintiff.  The Federal Circuit, however, held these interactions

were not sufficient.  *Id*. at 889.

        The court found the defendant's written and oral statements
were not "express charge[s] of infringement."  *Id*. at 888.  Even
under the totality of those circumstances, the court found the
plaintiff did not have a reasonable apprehension arising from the
defendant's statements because the "alleged charges of
infringement were merely jawboning, which typically occurs during
licensing negotiations."  *Id*. at 889.  The court also considered
the context in which the events arose and noted the defendant had
not taken any assertive conduct concerning the patent.  In fact,
the court observed it was the plaintiff that approached the
defendant, and the defendant "then defended its patent."  *Id*.
The court concluded the defendant in defending its patent "should
not be considered to have threatened [the plaintiff] with suit
. . . .  The statements by [the defendant] which [the plaintiff]
alleges were charges of infringement were simply [the
defendant's] responses to [the plaintiff's] initiatives."  *Id*.
The court also concluded the defendant's statements that the
plaintiff's activities "'fall within,' are 'covered by,' and are
'operations under' [the defendant's] patent fall short of
alleging infringement."  *Id*.  Finally, the court noted the
defendant's response of "yes" to the question whether it intended
to enforce its patent came "closest to constituting a threat,"
but the court concluded the defendant's answer "was reflexive and

11 - OPINION AND ORDER

obligatory" under the circumstances.  *Id*.  "To have answered 'no' would have potentially given [the plaintiff] free reign to infringe [the defendant's] patent."  *Id*.

Here the statements Plaintiff alleges McCormick made fall far short of the kinds of statements the Federal Circuit rejected in *Shell* as sufficient to form the basis of a reasonable apprehension of the threat of litigation under the totality of the circumstances.  McCormick did not make any reference to Plaintiff's product, did not state he believed Plaintiff's product infringed LaCrosse's patents, and did not make any statement as to whether LaCrosse believed Plaintiff's product might infringe LaCrosse's patents.  LaCrosse, like the defendant in *Shell*, did not take assertive action against Plaintiff concerning the patents at the time Plaintiff filed the Complaint. Instead Boyle approached McCormick, and McCormick "then defended [the] patents."  As the court concluded about the parties in *Shell*, the defendant may never have considered any action against the plaintiff if the plaintiff had never approached the defendant.  The same is true here.

   **B.  Litigiousness of a Part-Owner of ESL**

Plaintiff also contends the alleged litigiousness of a part-owner of ESL, the company LaCrosse "teamed with" to purchase the patents at issue, forms part of the basis for Plaintiff's reasonable apprehension that LaCrosse would bring a patent-

12 - OPINION AND ORDER

infringement action against Plaintiff.  Specifically, Boyle

states in his Declaration:

> I knew LaCrosse had teamed with 'Euro Supplies
> Limited' (known as 'ESL'), which was in large part
> directed by Rolf Haupt, to purchase the Patents-
> in-Suit.  Mr. Haupt has a reputation for being
> both very aggressive and litigious in its [*sic*]
> use of patents and other claimed intellectual
> property rights, and he is well financed.

Boyle Decl. ¶ 4.

In *Indium Corporation of America v. Semi-Alloys,*

*Incorporated*, the plaintiff alleged it had a reasonable

apprehension of litigation because the defendant had filed

infringement actions against other alleged infringers several

years before the plaintiff began manufacturing the product at

issue.  781 F.2d 879, 883 (Fed. Cir. 1985).  The court held this

prior patent litigation against "two other parties unconnected

with [the plaintiff] was too remote to make [the plaintiff's]

apprehension of further litigation . . . reasonable, insofar as

necessary to give standing to bring a declaratory action on that

basis."  *Id*.

Here Plaintiff alleges only unidentified, "very aggressive,"

and "litigious" behavior "in [the] use of patents" by Rolf Haupt,

a part-owner of ESL.  Plaintiff does not provide any information

as to the nature of the litigious behavior, the patents that gave

rise to that litigation, the time such litigation occurred, or

the parties involved in the alleged litigation.  Indeed, the

13 - OPINION AND ORDER

facts alleged by Plaintiff are even more remote than those alleged by the plaintiff in *Induim*.

Even viewing the facts in the light most favorable to Plaintiff under the totality of the circumstances, the Court concludes Plaintiff has not established by a preponderance of the evidence that it had a sufficient basis to form a reasonable apprehension that LaCrosse would file an infringement action against Plaintiff at the time it filed this declaratory-judgment action.  Plaintiff, therefore, has not established an actual controversy existed at the time it filed this action.

Accordingly, the Court grants Defendant LaCrosse's Motion to Dismiss on the basis that this Court lacks subject-matter jurisdiction.  As a result, the Court denies as moot Defendants' Motion to Drop LaCrosse as a party.


### DEFENDANT RICHMOND'S MOTION TO DISMISS PURSUANT TO RULE 12(B)(2)

As noted, Richmond contends the Court should dismiss Plaintiff's Second Amended Complaint on the ground that the Court lacks personal jurisdiction over Richmond.  Because the Court has determined it lacks subject-matter jurisdiction over this matter, however, the Court denies as moot Defendant Richmond's Motion to Dismiss pursuant to Rule 12(b)(2).  *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574 (1999)(district court has discretion to consider matters of subject-matter jurisdiction before personal

14 - OPINION AND ORDER

jurisdiction).

### DEFENDANTS' MOTION TO TRANSFER VENUE

Because the Court has determined it lacks subject-matter jurisdiction over this matter, the Court also denies Defendants' Motion to Transfer Venue as moot.

### CONCLUSION

For these reasons, the Court the Court **GRANTS** Defendants' Motion to Dismiss pursuant to Rule 12(b)(1) (#44) as to Defendant LaCrosse, **DENIES as moot** Defendants' Motion to Dismiss pursuant to Rule 12(b)(2) (#44) as to Defendant Richmond, **DENIES as moot** Defendants' Motion to Drop Party (#44), and **DENIES as moot** Defendants' Motion to Transfer Venue (#58).

IT IS SO ORDERED.

DATED this 5th day of June, 2006.

/s/ Anna J. Brown

_____
ANNA J. BROWN
United States District Judge